600 P.2d 841

**AAMCO TRANSMISSIONS, INC.,
Plaintiff-Appellant,**

v.

**TAXATION AND REVENUE DEPARTMENT of the State of the New Mexico, Defendant-Appellee.**

**No. 3704.**

Court of Appeals of New Mexico.

July 24, 1979.

Clifford C. Gramer, Jr., Jones, Gallegos, Snead & Wertheim, Santa Fe, and R. Michael Kennedy, Jr., Bridgeport, Pa., for AAMCO Transmissions, Inc.

Brian F. Toohey, Felker & McFeeley, Santa Fe, and Lewis G. Rudnick, Lawrence A. Robins, Rudnick & Wolfe, Chicago, Ill., for International Franchise Ass'n as amicus curiae.

Jeff Bingaman, Atty. Gen., Santa Fe, Sarah Bennett, Sp. Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

WALTERS, Judge.

The Taxation and Revenue Department assessed a gross receipts tax against appellant for franchise fees received from New Mexico AAMCO dealers. AAMCO appealed the assessment, arguing that it does no business in New Mexico; indeed, that it is a Pennsylvania corporation with no employees, assets or property located in New Mexico upon which the gross receipts tax could apply.

AAMCO further claims that its transactions are predominantly, if not wholly, in interstate commerce; thus, the imposition of the tax was violative of the Due Process and Commerce clauses of the federal Constitution, and that the decision was arbitrary, capricious, and contrary to law.

The Department Hearing Officer recognized in his decision that appellant is a Pennsylvania corporation with its principal place of business in Pennsylvania; that it has a federally registered trademark and trade name, "AAMCO Transmissions."

He noted that, as a franchisor, AAMCO enters into agreements with licensees for the use of its trade name and trademark, and also manufactures specialty equipment and inventory items for use by its franchisees. AAMCO receives, in return, a weekly percentage (9%) of the weekly gross receipts of its franchisee (which AAMCO terms "franchise fees") from every source connected with the franchisee's business. There are five dealerships in New Mexico which pay these franchise fees to AAMCO. It is only upon these franchise fee payments that the Department assessed a gross receipts tax. "License fees," "service fees," advertising assessments, and receipts from inventory and specialty sales paid to AAM-

CO by its franchisees were not included in the tax base.

AAMCO has no payroll, real property, personnel or offices located in New Mexico. It does furnish signs which must be leased or purchased by its dealers.

Upon these facts, the Department found that AAMCO's sales of tangible property and its granting of exclusive franchises constituted engaging in intrastate business in New Mexico, and the franchise fees received therefrom were subject to the gross Receipts Tax. We affirm.

By mandate of the legislature, this court will set aside a decision and order of the Department only if it is found to be: (a) arbitrary, capricious or an abuse of discretion; (b) not supported by substantial evidence in the record; or (c) otherwise not in accordance with the law. Section 7–1–25, N.M.S.A.1978.

The New Mexico Gross Receipts and Compensating Tax Act (§§ 7–9–1, et seq., N.M.S.A.1978) imposes a tax on the gross receipts of any person engaging in business in New Mexico. Section 7–9–4 A, N.M.S.A. 1978. "Engaging in business" is defined as "carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit." Section 7–9–3 E.

"Gross receipts" is defined, in relevant part, as "the total amount of money or the value of other consideration, received from selling property in New Mexico, from leasing property employed in New Mexico or from performing services in New Mexico." Section 7–9–3 F. "Property" means "real property, tangible personal property, *licenses, franchises*, patents, *trademarks* and copyrights." Section 7–9–3 I. Leasing is defined as "any arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property." Section 7–9–3 J. The Department imposed the tax on the determination that the signs, franchise, and franchise fees fall within these definitions of taxable New Mexico activity.

AAMCO denies any business dealings in New Mexico, and points out the following evidence from the record: AAMCO only advertises nationally for franchisees, and does not solicit franchise purchasers here in New Mexico; all negotiations with franchise prospects occur in Pennsylvania, and franchise agreements are executed there; AAMCO has no real estate holdings, offices or employees in New Mexico; franchise training courses and other company facilities are in Pennsylvania or New Jersey; there are no representatives stationed in New Mexico, and AAMCO personnel visit New Mexico franchisees only infrequently.

Under its franchise agreements with its dealers, AAMCO allows to them the use of its federally registered trade name and trademark. It requires its franchisees to purchase only AAMCO opening inventory and equipment, and AAMCO parts and assembly sets, or such other inventory, equipment or sets as AAMCO approves. Franchisees are required to attend a training program, and $2500 of the initial license (franchise) fees of $17,500 is allocated toward payment of that training session. Among other things, the franchise agreement requires the licensee to devote full-time to the dealership; he must use AAMCO's promotional material, and buy such printed matter, sales and reporting forms as AAMCO requires; he is obliged to share in local and national advertising costs with the content, type, and placement of national advertising solely within AAMCO's control; and he must attend any further training sessions or conferences that AAMCO shall make available. Under the agreement, AAMCO is not required to provide further training or any of the consulting or promotional services which, in fact, it does make available to its franchisees.

At oral argument counsel for AAMCO agreed that the franchise is considered a leasing arrangement, but argued that AAMCO owns in New Mexico only intangible assets consisting of a federally registered trademark and service mark. It is, it claims, the right to use these marks which the Department referred to as "the intangible bundle of rights," and classified as the property taxable by the State.

We think AAMCO overlooks the plain language of the statutes which we have referred to above. Franchises are specifically enumerated as "property" under our taxing laws. Included in the gross receipts definition is income received from leasing property. But the trademark, which indeed may have its *situs* in Pennsylvania, is not the entirety of the intangible property owned by AAMCO in New Mexico. It has a substantial monetary interest in the good will and economic health of its franchisees' businesses, and those businesses are protected and benefited by laws of New Mexico. In addition, it leases tangible property, its signs.

A determination that AAMCO is engaged in business in New Mexico must necessarily overlap to some degree in the determination of nexus raised in appellant's due process argument. Putting that question to the side for a moment, however, we are impressed with the test presented in *Besser Co. v. Bureau of Revenue*, 74 N.M. 377, 383, 394 P.2d 141, 146 (1964), which stated that to decide whether one's activity constituted "engaging in business" in New Mexico, "[t]he real question is whether the sale or lease is in line with the business for which the seller or lessor was organized and in which it engages."

AAMCO is in the business of selling franchises, providing some technical assistance and advice by telephone and brochures to its franchisees, developing and marketing AAMCO parts, creating and distributing advertising copy, and training new franchisees. Its primary source of income, according to evidence given by the AAMCO executive officer at the hearing, is from sales of franchises and sale of transmission parts available only to its franchisees. The value of its enterprise depends upon the business success of its numerous franchisees throughout the various states. Their successes are, in large part, reliant upon the benefits and protections received from the states in which they operate. The leased trademarks and tradenames, and their businesses, are protected in accordance with all New Mexico laws and the functions of the State's governmental bodies. AAMCO receives a direct benefit from its franchisees' sustained operations through its monthly collection of 9% of its franchisees' gross receipts—an ongoing lease payment from the franchisees for the privilege of using AAMCO's trademark and tradename.

Applying the *Besser* yardstick, AAMCO's leases with New Mexico dealers are precisely "in line with the business for which [AAMCO] was organized and in which it engages."

Thus, if AAMCO is engaged in business in New Mexico—and we affirm the Department's finding in that regard—it cannot be engaged solely in interstate commerce as it contends. AAMCO urged, alternatively, that if its operations are not wholly interstate, then only an apportionment of the AAMCO receipts to those activities which are wholly intrastate is properly taxable. This argument, too, must fail because: (1) AAMCO had the burden of proving, if applicable, a proper apportionment, *Standard Pressed Steel Co. v. Department of Revenue of Washington*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975), which it did not do. Instead, it insisted at the hearing below that *all* of its business was interstate. (2) The tax applies evenly to in-state and out-of-state franchisors, *Alaska v. Arctic Maid*, 366 U.S. 199, 81 S.Ct. 929, 6 L.Ed.2d 227 (1961), and thus it does not discriminate so as to violate the Commerce Clause. (3) None of the fees upon which the tax is assessed relate to any of the alleged interstate services available from AAMCO to the franchisee but, rather, are tied directly and completely to the monthly lease payments computed on receipts earned from the day-to-day operation of the businesses under AAMCO's trademark and trade name in New Mexico.

We are asked to find that imposition of the tax offends the Due Process Clause by reason of insufficient connections or nexus between the State of New Mexico and AAMCO's Pennsylvania services and activities. As we have pointed out above, the franchises are operated in New Mexico; the monthly lease payment is calculated as a

percentage of income earned by New Mexico franchisees from their New Mexico businesses; and AAMCO has both tangible and intangible "property," as defined in the statute, within the state. These contacts provide that "definite link . . . [and] minimum connection" between AAMCO and New Mexico sufficient to establish nexus. *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954).

The Supreme Court observed, in *Curry v. McCanless*, 307 U.S. 357, 367–368, 59 S.Ct. 900, 906, 83 L.Ed. 1339, 1348 (1939), that:

> when the taxpayer extends his activities *with respect to his intangibles*, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains . . . .
> [I]ncome may be taxed both by the state where it is earned and by the state of the recipient's domicile. Protection, benefit, and power over the subject matter are not confined to either state. The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business. (Our emphasis.)

We are mindful, too, that the interstate commerce and due process arguments were pressed by the taxpayer in *Besser, supra*. The responses given in *Besser* apply with the same vigor to the facts of this case as they did when Justice Moise framed that opinion in 1964. Nothing that has been presented on this appeal persuades us that we should not adopt the identical rationale expressed in *Besser*, to affirm the Department's order:

> Under the facts of the instant case, with plaintiff's property [the franchise and its leased signs] situated in New Mexico and earning [a percentage of gross receipts] which [is] paid to plaintiff, that "Protection, opportunities and benefits" from the state have been enjoyed by plaintiff is manifest. The tax . . . is an entirely proper and reasonable exaction in

return for that "protection" and those "opportunities" and "benefits". . . .

74 N.M. at 387, 394 P.2d at 148.

The decision and order of the Department should be affirmed.

IT IS SO ORDERED.

ANDREWS, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

*I specially concur.*

I concur based upon my views expressed in *Baskin-Robbins Ice Cream Company v. Revenue Division, Department of Taxation and Revenue,* 93 N.M. 301, 599 P.2d 1098 (Ct.App.1979). In *Baskin-Robbins*, a franchise case, we held that a taxpayer was engaged in doing business in New Mexico and was not engaged in interstate commerce. The facts are not so dissimilar that a different result can be reached in AAMCO.

For the first time, we are confronted with *Indiana Dept. of St. Rev. v. Convenient Ind. of Am., Inc.,* 157 Ind.App. 179, 299 N.E.2d 641 (1973). The court held that the minimal activities in Indiana of taxpayer, a Kentucky Corporation, with respect to service fees and advertising fees paid to taxpayer by Indiana franchisees fell short of the degree of activity contemplated by the Gross Income Tax Act. With reference to the "franchise fee," the trial court found:

> 7. The franchise fee is income from the sale of an intangible. Plaintiff is a nonresident of the state of Indiana and such intangible does not have a situs in the state of Indiana, but rather has a situs in Louisville, Kentucky, the principal place from which the business of plaintiff was directed or managed.

The trial court concluded:

> 2. The Indiana gross income tax levied by the state of Indiana upon the receipts from the sale of the franchise was improper in that such receipts constituted receipts from an intangible asset having a situs in the state of Kentucky. [299 N.E.2d at 644.]

**394**

The State Department of Revenue did not appeal from the above finding and conclusion. Therefore, says Taxpayer:

AAMCO's trademarks and service marks are intangible assets which have a *situs* in the State of Pennsylvania, and, as such, they cannot be taxed, nor can they be relied upon as property found within the State of New Mexico, for purposes of the New Mexico gross receipts tax.

*Convenient* was not subject to Indiana law because only one phrase in § 6–2–1–2, Ind.Code Ann. (Burns) was applicable:

. . . and upon the receipt of gross income derived from activities or businesses or any other source within the state of Indiana, of all persons who are not residents of the state of Indiana . . . .

There is no resemblance between the Indiana and New Mexico statutes. AAMCO is engaged in business in New Mexico. *Baskin-Robbins, supra.* AAMCO did not challenge Finding No. 28. It reads in part:

By specifically providing that licenses, franchises, patents, trade marks [sic] and copyrights are property . . . it is apparent that the legislature intended to impose a tax on the receipts from leasing such property employed in New Mexico.

This finding, unchallenged, is conclusive.

AAMCO assumes it is in interstate commerce and argues that taxation is a burden on commerce. The only contacts AAMCO has with New Mexico are a franchise granted to a licensee, together with the right of the licensee to use its trade name and trademark "AAMCO Transmissions," and AAMCO signs that are leased. No facts have been presented and none can be found that establishes any intercourse or traffic between Pennsylvania and New Mexico with reference to its franchise, trade name or trademark.

The only difference between AAMCO and *Baskin-Robbins* is that AAMCO conducts a six-week course in Pennsylvania for prospective franchisees. International Franchise Association, as Amicus Curiae, states:

The record reflects that Appellant furnishes services in the nature of training, operating manuals, consultation and continuing advice, advertising, research and development, and the maintenance and expansion of its franchise system and that such services are performed outside of New Mexico.

These facts establish that interstate commerce is absent.

Under the stringent statutory provisions of the Gross Receipts Tax Act, no franchise can escape payment of the tax. Relief can be obtained only in the legislature, not in the courts.