2006-NMSC-006

131 P.3d 22

**KMART CORPORATION, a Michigan corporation, Petitioner,**

v.

**TAXATION AND REVENUE DEPARTMENT OF THE STATE OF NEW MEXICO, Respondent.**

No. 27,269.

Supreme Court of New Mexico.

Dec. 29, 2005.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Curtis W. Schwartz, Timothy R. Van Valen, Santa Fe, McDermott, Will & Emery, L.L.P, Donald M. Griswold, Melise R. Blakeslee, William L. Goldman, Joshua D. Odintz, Washington, DC, for Petitioner.

Jeffrey W. Loubet, Bruce J. Fort, Santa Fe, for Respondent.

Rubin, Katz, Salazar, Alley, Rouse & Herdman, James S. Rubin, Santa Fe, Morrison and Foerster, L.L.P., Paul H. Frankel, Hollis L. Hyans, Amy F. Nogid, New York, NY, for Amicus Curiae Lanco Inc.

## OPINION

MAES, Justice.

{1} We granted a Petition for Certiorari filed by Kmart Properties, Incorporated ("KPI"). On appeal, Kmart Corporation ("Kmart") was substituted as a party for KPI because KPI subsequently merged with Kmart, who assumed KPI's state and local taxation rights and obligations. Kmart asks this Court to reverse the opinion by our Court of Appeals, which upheld the imposition of the Gross Receipts Tax ("GRT") and

the Corporate Income Tax on KPI by the New Mexico Taxation and Revenue Department ("the Department"). Kmart presented six questions for our review: (1) Whether New Mexico has jurisdiction to tax KPI under the Commerce Clause of the United States Constitution; (2) Whether New Mexico has jurisdiction to tax KPI under the Due Process Clause of the United States Constitution; (3) If New Mexico has taxing jurisdiction, whether New Mexico's Corporate Income and Franchise Tax Act, NMSA 1978, §§ 7–2A–1 to –17 (variously amended through 2003), and Uniform Division of Income for Tax Purposes Act, NMSA 1978, §§ 7–4–1 to –21 (variously amended through 2002), subject KPI income to state taxation; (4) If New Mexico has taxing jurisdiction, whether the GRT applies to receipts from the granting (a "sale") of a license to use property when the granting occurs outside of New Mexico; (5) If New Mexico has taxing jurisdiction, whether the administrative hearing process, as implemented by the Department, violates KPI's due process rights; and (6) If New Mexico has taxing jurisdiction, whether the Hearing Officer, by failing to render his Decision and Order within thirty days of the completion of briefing during the administrative protest renders the Decision and Order void, and requires a holding that KPI was entitled to a grant of its protest?

{2}  We find that the New Mexico GRT does not apply to the transaction at issue because it involved the sale of property and the GRT does not impose a tax on sales that take place entirely out of the state. Because analysis of New Mexico state statutes wholly resolves this issue, we do not need to address Kmart's constitutional challenges to the imposition of the GRT as raised in questions one and two above. With respect to questions five and six, this case is resolved completely without examining the Department's administrative hearing process. Additionally, we now quash certiorari on the Corporate Income Tax issues identified in question number three and order that the Court of Appeals opinion, *Kmart Properties, Inc. v. New Mexico Taxation & Revenue Dep't*, 2006–NMCA–026, 139 N.M. 177, 131 P.3d 17, shall be filed concurrent with the filing of this opinion.

## FACTS AND PROCEDURE BELOW

{3}  The facts of this case are not disputed. Kmart is a well-known retailer of consumer goods throughout the United States. During the tax years at issue, 1991 through 1996, Kmart owned and operated twenty-two stores in New Mexico. Kmart is both registered as a corporation and has its principal place of business in Michigan. In 1991, Kmart formed KPI as a wholly owned subsidiary. KPI is also a Michigan corporation with its principal place of business there. KPI was housed in rented office space near Kmart's corporate headquarters. Its employees consisted of two intellectual property attorneys and support staff transferred from Kmart.

{4}  In 1991, Kmart assigned to KPI certain trademarks, trade names and domestic services marks (collectively, "Marks"), along with their associated goodwill. The Marks included the name "Kmart" and many of its well-known brand names. The Marks were valued at between $2,734,100,000 and $4,101,200,000 by an independent appraiser. KPI's primary business purpose was the licensing of the Marks. Pursuant to a plan created by Price–Waterhouse, Kmart and KPI entered into a License Agreement concerning the Marks. The License Agreement granted Kmart the exclusive right to use the Marks, subject to quality control restrictions, and in exchange, Kmart paid KPI a license fee of 1.1% of Kmart's national net sales. All activity related to the License Agreement took place in Michigan. Michigan law governs the Agreement and the parties are required to bring any legal actions related to it in Michigan courts. KPI managed Kmart's trademark portfolio, monitored its compliance with the License Agreement, and provided trademark-related services to Kmart and its subsidiaries. KPI's operations were contained within Michigan, and the record contains no indication that any of its employees or agents ever had the pleasure of visiting New Mexico. KPI did not file tax returns in New Mexico for the years at issue here, 1991 through 1996.

{5}  It seems apparent that KPI was created to reduce Kmart's state tax liability.

KPI's formation and the plan for reducing Kmart's state tax liability are spelled out in a Price–Waterhouse document prepared for Kmart entitled *Utilization of an Investment Holding Company to Minimize State and Local Income Taxes*. KPI was formed as an "investment holding company," also known as an "intangible holding company," in Michigan, which does not tax royalty or interest income. Its direct activities were restricted to Michigan so that it would not be taxed by another state. As a result of the formation of KPI, Kmart was able to deduct two different "losses" from its income tax liability in other states. First, Kmart could deduct the royalty payments it made to KPI, as a business expense. Second, because KPI loaned back to Kmart the money it received from the royalty payments at market interest rates, Kmart could claim a deduction for interest expenses. As a result of these deductions and expenses, Kmart's stated profits declined and its state income tax liability was consequently reduced. In one year, Kmart was able to completely eliminate its corporate income tax liability in New Mexico.

{6} Kmart's royalty deductions caught the eye of an auditor for the New Mexico Taxation and Revenue Department in 1997. The Department requested a copy of the License Agreement. It applied the 1.1% royalty rate to the relevant New Mexico sales revenue from Kmart stores to determine KPI's income attributable to New Mexico under the License Agreement. This resulted in a determination that KPI earned in excess of two million dollars per year from business in New Mexico Kmart stores. The Department then performed an audit on KPI, which calculated corporate income tax and gross receipts tax on KPI. The Department assessed $758,142 corporate income tax due from 1991 through 1996 and $478,099.55 in gross receipts tax due from the same period. The Department also assessed penalties and interest on KPI for failing to pay the taxes on time. The Department did not challenge the validity of the transactions creating KPI, but attempted to assert taxes on KPI income generated from Kmart's stores in New Mexico.

{7} KPI filed a timely protest of all assessments in accordance with NMSA 1978, Section 7-1-24(B) (2000). A Department officer heard the protest and affirmed the assessment of corporate income tax and gross receipts tax plus interest, but reversed the assessment of penalties. KPI appealed this ruling to the Court of Appeals. In that appeal, the Department did not appeal the hearing officer's determination to eliminate the penalties.

{8} The Court of Appeals upheld the Department's imposition of both taxes. In its discussion, the Court of Appeals focused on the constitutionality of imposing corporate income tax and gross receipts tax on KPI. It held that neither the Commerce Clause nor the Due Process Clause of the United States Constitution prohibit New Mexico from imposing the corporate income tax or gross receipts tax on KPI. Further, the court held that the taxes as written applied to KPI, specifically that the GRT applied to the License Agreement. We granted Kmart's Petition for Certiorari concerning both taxes pursuant to Rule 12-502 NMRA 2005. Subsequently, the case was stayed when Kmart filed for bankruptcy on July 30, 2002. *In Re: Kmart Corp.*, Cause No. 02-B0247 (Bankr. N.D.Ill.). We entered an Order lifting the stay on June 13, 2003. In doing so, we lifted the stay as to all issues on certiorari, but limited briefing and oral argument to whether the GRT applies to receipts from the granting of a license to use property when the granting occurs outside of New Mexico, including how the constitutional issues in the first and second questions in the petition for certiorari relate to the gross receipts issue. The Department filed a motion to quash certiorari on the Corporate Income Tax issue contained in issue three. After considering the response of Kmart, we now quash certiorari on the issue of Corporate Income Tax.

## STANDARD OF REVIEW

{9} Because the facts in this case are undisputed, we review de novo the court's or administrative agency's application of the law to the facts. *TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474. The

interpretation of phrases within a statute is a question of law that is reviewed de novo. *Id.*

## DISCUSSION

{10} This case requires us to decide if the Legislature intended to apply the GRT to the receipts generated from the License Agreement between KPI and Kmart. The Court of Appeals opinion in *Kmart* did not undertake a separate analysis of the GRT on the licensing transaction between KPI and Kmart. It relied instead on the analysis in an earlier opinion—*Sonic Industries, Inc. v. State,* 2000–NMCA–087, ¶¶ 14–15, 129 N.M. 657, 11 P.3d 1219, *cert. granted,* 129 N.M. 519, 10 P.3d 843 (2000)—because Kmart conceded that *Sonic* was determinative of the state law issue. Our analysis here of the GRT is thus necessarily in response to the Court of Appeals in *Sonic. Sonic* involved the taxability of franchise fees rather than trademark licensing royalties and it is thus not precisely on point. However, we do not perceive any legally significant distinction between franchise fees and trademark licensing royalties in this context.

{11} To determine whether the 1.1% royalty should be taxed as gross receipts, a two-step analysis is necessary. First, we must engage in statutory interpretation to determine if the Legislature intended to tax those receipts under the GRT. Second, if we conclude that the Legislature intended to tax the receipts under the GRT, we must determine whether the tax violates the Commerce Clause, commonly referred to as the Dormant Commerce Clause, of the United States Constitution. U.S. Const., art. I, § 8. However, if we determine that the Legislature did not intend to tax the receipts under the GRT, then we need not perform a constitutional analysis. *Prop. Tax Dep't v. Molycorp, Inc.,* 89 N.M. 603, 605, 555 P.2d 903, 905 (1976) ("This Court will not pass upon constitutional questions if the merits of the case may be otherwise fairly decided.").

{12} In our attempt to determine whether the Legislature intended to tax the receipts generated from the licensing agreement between Kmart and KPI, we examine both the purpose behind the GRT and the statute's recent history. The purpose of the GRT is to "provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico and to protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax." NMSA 1978, § 7–9–2 (1966). The GRT defines gross receipts as "the total amount of money or the value of other consideration received from selling property in New Mexico, from leasing property employed in New Mexico, from selling services performed outside New Mexico, the product of which is initially used in New Mexico, or from performing services in New Mexico." NMSA 1978, § 7–9–3.5(A)(1) (2003). The GRT defines property as "real property, tangible personal property, licenses, franchises, patents, trademarks and copyrights." NMSA 1978, § 7–9–3(J) (2003). Thus, the Marks are property as defined by the GRT.

{13} Historically, property like the Marks was taxed under the GRT if the property was used or employed in New Mexico because the granting of a license to use intangible property was considered a lease under the GRT. § 7–9–3.5(A)(1) (stating that the GRT applied to "leasing property employed in New Mexico"). In 1979, our Court of Appeals decided a trio of cases that upheld the imposition of the GRT on the granting of a license in franchise agreements, when the intangible property was owned by an out-of-state corporation but was used or employed in New Mexico. *See Am. Dairy Queen Corp. v. Taxation and Revenue Dep't,* 93 N.M. 743, 747, 605 P.2d 251, 255 (N.M.Ct.App.1979) ("[T]he legislature created a system of taxation under which a tax can be imposed upon and paid by a licensor who 'leases' a trademark to a licensee."); *Baskin–Robbins Ice Cream Co. v. Revenue Div., Dep't of Taxation & Revenue,* 93 N.M. 301, 304, 599 P.2d 1098, 1101 (N.M.Ct.App.1979) (same); *AAMCO Transmissions, Inc. v. Taxation & Revenue Dep't,* 93 N.M. 389, 391, 600 P.2d 841, 843 (N.M.Ct.App.1979) (same).

{14} In 1991, the Legislature amended the definition of leasing within the GRT. *See* 1991 N.M. Laws, ch. 203, § 1. It is this amended version of the statute that we must

examine to determine if the GRT applies to the License Agreement in this case. In the amended statute, leasing was defined as "an arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property, *except that the granting of a license to use property is the sale of a license and not a lease.*" NMSA 1978, § 7–9–3(E) (1991) (emphasis added). This 1991 amendment marked a significant change in the treatment of the granting of a license. As discussed above, prior to the 1991 amendments, the GRT was imposed on the receipts generated from treating the granting of a license, occurring outside New Mexico by an out-of-state corporation, as a lease. Therefore, the receipts generated from the License Agreement in this case would have been taxable as leased property in New Mexico. *See Am. Dairy Queen Corp.*, 93 N.M. at 747, 605 P.2d at 255; *Baskin–Robbins Ice Cream Co.*, 93 N.M. at 304, 599 P.2d at 1101; *AAMCO Transmissions, Inc.*, 93 N.M. at 391, 600 P.2d at 843.

{15} The 1991 amendments clearly mandate a departure from treating the granting of a license as a lease, to treating the granting of a license as a sale of a license. § 7–9–3(E). By treating the granting of a license as the sale of a license, we believe that the Legislature intended this transaction be analyzed as a sale. We presume that the Legislature knows the state of the law when it enacts legislation, *Bybee v. City of Albuquerque*, 120 N.M. 17, 20, 896 P.2d 1164, 1167 (1995), and when enacting a statute, we conclude that the Legislature intended to change the law as it previously existed. *Bettini v. City of Las Cruces*, 82 N.M. 633, 635, 485 P.2d 967, 969 (1971).

{16} The Department argues that Kmart owes gross receipts tax on the licensing agreement because it sold intangible property located in New Mexico, and thus the GRT applies. In other words, the Department wants us to focus on the location of the property when analyzing whether the receipts generated from the License Agreement were from "selling property in New Mexico" under the GRT. The Department argues that if we find that the intangible property attained a business situs in New Mexico, then the GRT would apply because there would be property sold in New Mexico.

{17} In contrast, Kmart argues that since the License Agreement was completed out-of-state, there was "no sales activity" in New Mexico that would be subject to the GRT. In other words, Kmart argues that the act of selling, rather than the location of the property, determines whether "selling property in New Mexico" occurred under Section 7–9–3.5(A)(1).

{18} We believe that the issue in this case may be resolved completely by examining the language of the Gross Receipts and Compensating Tax Act. Under the Act, the GRT only applies when the selling of property takes place within the borders of New Mexico. § 7–9–3.5(A)(1) ("'gross receipts' means the total amount of money or the value of other consideration received from selling property in New Mexico"). Thus, licensed property can only be subject to the GRT in New Mexico if the license was in essence *sold in New Mexico. Id.* As previously discussed, the parties agree that all activity related to the License Agreement took place in Michigan. KPI, located in Michigan, licensed the Marks in Michigan, to Kmart, a Michigan corporation. With all critical elements and parties being in Michigan, it cannot be said that this transaction involved the sale of property within the borders of New Mexico. While we recognize that the subject matter property of the License Agreement was used in New Mexico, this use does not subject the Agreement to the GRT. The language "selling property in New Mexico" means that the property as defined in the tax code must be sold in New Mexico for it to be taxed, otherwise the statute would read "selling property used in New Mexico" is taxable.

{19} Additionally, we are persuaded by Kmart's argument that the Legislature intended to exempt out-of-state grants of licenses to use intangibles in New Mexico. Kmart asserts that after the 1991 amendments the license in this case would have been subject to another tax, the Compensating Tax. NMSA 1978, § 7–9–7(A) (1995). This Tax is designed to subject out-of-state sellers of goods that are used in New Mexico

to a tax similar to the GRT. *Id.* Our Court of Appeals explained the distinction between the Compensation Tax and the GRT.

> Compensating tax is paid by a New Mexico purchaser only if the sales occurred outside of New Mexico. Gross receipts tax is due from the seller on its receipts from the sales only if the sales occurred inside New Mexico. Therefore, the determination as to which tax applies turns on the point of sale.

*Siemens Energy & Automation, Inc. v. Taxation & Revenue Dep't,* 119 N.M. 316, 322, 889 P.2d 1238, 1244 (N.M.Ct.App.1994) (internal citations omitted). Kmart contends that *Siemens* holds that the determination of where a sale takes place for purposes of the GRT depends on the point of sale rather than simply the location of the property. In this case, Kmart argues that all of the relevant sales activity took place in Michigan and therefore the Compensating Tax was the appropriate tax rather than the GRT.

{20} In 1993, the Legislature amended the definition of property in Compensating Tax so that it does not include intangible property. 1993 N.M. Laws, ch. 31, § 2. Thus, the Compensating Tax would no longer apply to the receipts generated by the License Agreement. This, Kmart claims, shows a legislative intent to lessen the tax burden on out-of-state sales transactions of intangible property. We agree. With this statutory change, the Legislature altered the taxation of an out-of-state grant of a license, resolving the issue in favor of tax exemption.

**CONCLUSION**

{21} We find that the GRT does not apply to the receipts generated from the Licensing Agreement. Because we find that the GRT does not apply, we do not need to analyze whether or not the Commerce Clause or the Due Process Clause forbid the GRT to apply to the License Agreement. Additionally we quash certiorari on the issue of Corporate Income Tax.

{22} **IT IS SO ORDERED.**

MINZNER, SERNA and CHÁVEZ, Justices, concur.

BUSTAMANTE, Chief Judge, New Mexico Court of Appeals (sitting by designation).