This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41090**

**VISTA STAFFING SOLUTIONS INC.,**

      Protestant-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

      Respondent-Appellee,

**IN THE MATTER OF THE PROTEST OF THE ASSESSMENT ISSUED UNDER LETTER ID NO. L0797491376.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Pillsbury Winthrop Shaw Pittman LLP
Evan M. Hamme
New York, NY

Sanchez Mowrer & Desiderio, P.C.
Robert J. Desiderio
Janette A. Duran
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Vista Staffing Solutions, Inc. (Taxpayer) appeals a decision and order of the Administrative Hearing Officer (the AHO) denying its protest of the New Mexico Taxation and Revenue Department's (the Department) assessment of unpaid gross receipts tax (GRT), interest and penalty, pursuant to the New Mexico Gross Receipts and Compensating Tax Act (the Act), NMSA 1978, §§ 7-9-1 to -121 (1966, as amended through 2024),[1] in the amount of $2,888,542.84. The AHO concluded in relevant part that Taxpayer engaged in business in New Mexico and therefore, is subject to GRT on the income received from its business model placing medical professionals in its client's healthcare facilities located in New Mexico. On appeal, Taxpayer contends the AHO erred in (1) concluding that Taxpayer performed its services in New Mexico and therefore did not qualify for the out-of-state exemption under Section 7-9-13.1, and (2) finding Taxpayer was liable for civil negligence penalties under NMSA 1978, Section 7-1-69(A) (2007, amended 2021). For the reasons explained below, we conclude the Taxpayer established it performed services out of state and was exempt from GRT under Section 7-9-13.1. We reverse.

**BACKGROUND**

**{2}** Taxpayer is a medical staffing agency based in Utah that provides medical professional placement services to medical facilities (healthcare operators) across the country. Healthcare operators consist of hospitals, healthcare facilities, and health programs. Healthcare operators require licensed professionals—including physicians, nurse practitioners, physician assistants, and certified registered nurse anesthetists (medical professionals)—to perform healthcare services for patients at their healthcare operator locations. Taxpayer maintains a network of licensed medical professionals and makes referrals from its network to its healthcare operators' clients. When a medical professional from Taxpayer's network is selected by a healthcare operator, the medical professional provides healthcare services at the healthcare operator's location.

**{3}** The New Mexico Hospital Association (the Association) is a private member organization consisting of approximately forty-five healthcare operators. During the audit period, Taxpayer made medical professional referrals from its network to members of the Association and for New Mexico healthcare operators that are operated by the Indian Health Service. Taxpayer entered into a locum tenens agreement (the Agreement) with the Association to provide medical professionals who would perform medical services for patients in over forty healthcare operators' facilities in New Mexico. Taxpayer's services to healthcare operators included, in part, recruiting medical professionals to perform medical services for healthcare operators' patients, verifying

---

1The audit period underlying the assessment by the Department spans from January 31, 2010 to May 31, 2017. Individual sections of the Act reference previous amendments in effect at the time applicable to the specific audit period. When the most recent version of the statute reads the same as the version in effect during the audit period, we do not reference the historical amendment year. All references to Section 7-9-13.1 are to the 1989 amendment in effect at the time, so we have elected to not include the historical year in each subsequent citation.

the medical professional's training, education, licensure, verifying malpractice claims, onboarding, and billing. Taxpayer communicated with healthcare operators and medical professionals by telephone and email from its offices located outside of New Mexico. Taxpayer's sales staff occasionally visited healthcare operators in New Mexico to sell services and maintain client relationships.

{4}    When a healthcare operator selected Taxpayer's referred medical professional to fill an open position, under the Agreement, Taxpayer was required to execute an independent contractor agreement with the medical professional. Medical professionals are independent contractors, not employees of the healthcare operator or the Taxpayer. However, healthcare operators compensate Taxpayer for both Taxpayer's staffing services and the services provided by medical professionals. Medical professionals submit time sheets for hours worked to both the healthcare operators and Taxpayer. Then, Taxpayer bills healthcare operators for both Taxpayer's service fee and the medical professional's service, although these amounts are not apportioned on the invoice. The Agreement specifically provides that the healthcare operators "shall pay for services rendered by [Taxpayer] within sixty (60) days after receipt of a complete and accurate invoice and time sheets from [Taxpayer]" and that the healthcare operators may conduct random audits of Taxpayer's billing files for medical professionals who provided services under the agreement.

{5}    In 2018, the Department selected Taxpayer for an audit and assessed Taxpayer approximately $2,090,515 in unpaid GRT plus interest of approximately $379,924 and a civil negligence penalty of approximately $418,103 for the period from January 31, 2010 to May 31, 2017 (audit period). Taxpayer filed a protest and an administrative hearing was held on December 8, 2021. Relevant to this appeal, Taxpayer argued the assessment should be abated because it provided services entirely outside New Mexico and qualifies for an out-of-state exemption and the civil negligence penalty should not apply because Taxpayer "made at most a mistake of law in good faith and on reasonable grounds" that it did not believe it provided services in New Mexico. The AHO found, in relevant part, that Taxpayer engaged in business in New Mexico, failed to establish it qualified for any deductions or exemptions, and is therefore subject to GRT. The AHO upheld the penalty, finding Taxpayer negligently failed to pay GRT and did not demonstrate its failure to pay resulted from a good faith mistake of law on reasonable grounds.

**DISCUSSION**

{6}    "In reviewing the [hearing officer's] decision, we apply a whole-record standard of review." *Gemini Las Colinas, LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-039, ¶ 11, 531 P.3d 622 (internal quotation marks and citation omitted). This Court will reverse a hearing officer's decision only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015). A hearing officer's decision is arbitrary and capricious when "it is unreasonable or without a rational basis, when viewed in light of the whole record." *Process Equip. & Serv. Co. v. N.M. Tax'n Revenue*

*Dep't*, 2023-NMCA-060, ¶ 23, 534 P.3d 1043 (internal quotation marks and citation omitted). We review the whole record in the light most favorable to the hearing officer's decision. *ITT Educ. Servs., Inc. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 4, 125 N.M. 244, 959 P.2d 969. A decision is not supported by substantial evidence when the evidence does not support the result reached. *See Vigil v. N.M. Tax'n & Revenue Dep't*, 2022-NMCA-032, ¶ 9, 514 P.3d 15. Finally, a decision is not in accordance with the law "if the [hearing officer] unreasonably or unlawfully misinterprets or misapplies the law." *Process Equip. & Serv. Co.*, 2023-NMCA-060, ¶ 23 (internal quotation marks and citation omitted). We review questions of law and the application of the law to the facts de novo. *Robison Med. Rsch. Grp., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-065, ¶ 4, 535 P.3d 709.

**{7}** Any person engaging in business in New Mexico is subject to GRT. Section 7-9-4(A). Engaging in business in New Mexico means, "carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit" and does not qualify for any exceptions. Section 7-9-3.3 (2003). The Act defines "gross receipts," in relevant part, as "the total amount of money or the value of other consideration received from . . . selling services performed outside New Mexico, the product of which is initially used in New Mexico." Section 7-9-3.5(A)(1). "A statutory presumption exists that all of a person's receipts are subject to the gross receipts tax. Therefore, the taxpayer has the burden of overcoming this presumption." *ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 5; *see also* § 7-9-5(A). In the present case, Taxpayer challenges the taxability of the receipts based on the tax exemption as set forth in Section 7-9-13.1. To apply a tax exemption, (1) the statute allowing the exemption must be construed in the Department's favor and "must clearly and unambiguously express the right to the exemption"; and (2) "[T]axpayer must clearly establish the right to the exemption." *Process Equip. & Serv. Co.*, 2023-NMCA-060, ¶ 9 (internal quotation marks and citation omitted).

**{8}** The AHO found Taxpayer engaged in business in New Mexico by "placing [m]edical [p]rofessionals in [h]ealthcare [o]perator [f]acilities, in New Mexico, in order to provide services for remuneration, in New Mexico." "It was from this activity, the placement of a [m]edical [p]rofessional, that [Taxpayer] received a direct benefit in the form of compensation." Here, the parties do not dispute that Taxpayer engaged in business in New Mexico, but instead dispute whether Taxpayer performed any services in New Mexico. The Department contends that the services the healthcare professionals performed in New Mexico were attributable to Taxpayer because Taxpayer was only paid when healthcare professionals were placed in New Mexico. In response, Taxpayer contends in part that the medical professionals, who were independent contractors, performed services for its customers in New Mexico and not for Taxpayer. Taxpayer contends that the services it did provide directly, namely recruiting medical professionals to perform medical services for healthcare operators, verifying the medical professional's training, education, licensure, verifying malpractice claims, onboarding, and billing were performed outside of New Mexico and therefore it was entitled to the exemption set forth in Section 7-9-13.1.

**{9}**     In order to determine whether the AHO erred in finding the Taxpayer did not qualify for the GRT exception in Section 7-9-13.1, we must identify what services Taxpayer sold and where those services were performed. Doing so involves interpreting the relevant statutes de novo. *See Apache Corp. & Subsidiaries v. N.M. Tax'n & Revenue Dep't*, 2024-NMCA-080, ¶ 5, 560 P.3d 1 (citing *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474). "Generally, in construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Id.* ¶ 6 (alteration, internal quotation marks, and citation omitted). "[W]e evaluate legislative intent by first looking at the plain meaning of the language of the statute, reading the provisions together to produce a harmonious whole." *Robison Med. Rsch. Grp., LLC*, 2023-NMCA-065, ¶ 8 (internal quotation mars and citation omitted).

**{10}**     The Act defines "gross receipts," in relevant part, as "the total amount of money or the value of other consideration received from . . . selling services performed outside New Mexico, the product of which is initially used in New Mexico." Section 7-9-3.5(A)(1). The relevant exemption in effect during the audit period, Section 7-9-13.1(A), provided in part that "[e]xcept as provided otherwise in Subsection B of this section, exempted from the gross receipts tax are the receipts from selling services performed outside New Mexico the product of which is initially used in New Mexico." Section 7-9-13.1(B) identified three types of "research and development services" to which the exemption did not apply.

**{11}**     Notably, the plain language of the GRT exception under Section 7-9-13.1 includes nearly identical language as the relevant part of the "gross receipts" definition above. In determining the Legislature's intent of these nearly identical phrases, this Courts operates "under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law and did not intend to enact a law inconsistent with existing law." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 38, 329 P.3d 658 (omission, alteration, internal quotation marks, and citation omitted). Further, tax exemptions "must be clearly and unambiguously expressed in statute, and must be clearly established by the taxpayer claiming the right thereto." *Pub. Serv. Co. of N.M. v. N.M. Tax'n Revenue Dep't*, 2007-NMCA-050, ¶ 32, 141 N.M. 520, 157 P.3d 85 (internal quotation marks and citation omitted). When this Court reviews several sections of a statute for the purposes of statutory construction, "they must be read together so that all parts are given effect." *N.M. Depo v. N.M. Tax'n & Revenue Dep't*, 2021-NMCA-011, ¶ 10, 485 P.3d 773 (internal quotation marks and citation omitted). The definition of "gross receipts" was enacted in 2003—long after the exemption had been in place—and allows for those services that are excluded from the Section 7-9-13.1(A) exemption (listed in Section 7-9-13.1(B)) to be included in the definition of "gross receipts." The Section 7-9-13.1(A) exemption is clear and unambiguous, as is the exclusion of those services listed in Section 7-9-13.1(B). In reading the plain meaning of the definition of "gross receipts" and the exemption under Section 7-9-13.1 together, we conclude it was possible to be both subject to GRT and exempted from it, and we therefore turn to the application of the exemption.

**{12}** The exemption in 7-9-13.1(A) applies if two requirements are met: (1) "selling services performed outside New Mexico," and (2) "the product of which is initially used in New Mexico." As to the first requirement, we must determine what services Taxpayer sold and whether Taxpayer's services were performed in New Mexico. In doing so, we "focus[] on the service contracted for and where [the taxpayer] performs it" to determine if the service was performed in New Mexico and therefore taxable. *See ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 13. The purpose of the Agreement between Taxpayer and the healthcare operator is "to provide [p]articipating [i]nstitutions with quality-oriented supplemental staff that meets the standards established in this Request for Proposal." Under the Agreement, the healthcare operators pay Taxpayer only after a medical professional is successfully placed in its facility and the medical professional bills Taxpayer and the healthcare operator for their time worked. In this manner, Taxpayer performed placement services for members of the Association and Indian Health Service.

**{13}** Taxpayer's staff used electronic devices from its offices located out of state to carry out its primary recruitment, placement, onboarding, and ongoing billing services. Taxpayer admits their employees occasionally visited healthcare operators in New Mexico to sell services and maintain relationships. Nonetheless, we are unpersuaded that these occasional visits were the "primary services contracted for." The Department argues that while the medical professionals were credentialed virtually, the primary services the healthcare providers contracted for were the medical services performed in their New Mexico facilities. We disagree. While this may be the healthcare providers' ultimate goal, the evidence supports that only the medical professionals provide medical services, not Taxpayer. Accordingly, we do not impute the medical services performed by healthcare providers, who are independent contractors in New Mexico to Taxpayer. *Cf. Peisker v. Unemployment Comp. Comm'n*, 1941-NMSC-031, ¶ 9, 45 N.M. 307, 115 P.2d 62 (noting that independent contractors are liable for their own gross receipts taxes); § 7-9-17 (identifying employee exemption from gross receipts tax). We conclude Taxpayer's services were performed in Taxpayer's out-of-state offices and there is no substantial evidence in the record to support the AHO's conclusion that the Taxpayer's primary services were performed in New Mexico. Therefore, we determine Taxpayer meets the first requirement of the exemption.

**{14}** Next, we address the second requirement of the exemption, whether the "product" of Taxpayer's placement services was "initially used" in New Mexico. Taxpayer argues the AHO erred in finding that Taxpayer's service was "performed at the location of the placement" in New Mexico and that the AHO "conflated" Taxpayer's service with the product of the service. The AHO found that the exemption under Section 7-9-13.1 only applied to services that produced a tangible product and here, Taxpayer did not produce a tangible product and therefore, did not qualify for the exemption.

**{15}** However, the product of a service is "the direct result or consequence flowing from the service." *TPL, Inc.*, 2003-NMSC-007, ¶ 12 (internal quotation marks and citation omitted). And contrary to the AHO's apparent understanding, services may

produce both tangible and intangible results or products. *See id.* Here, the buyers are the healthcare facilities, located in New Mexico. The healthcare facilities used Taxpayer's recruiting and placement services to select, hire, and receive medical professionals for the intended purpose of the Agreement, to provide medical services in New Mexico. The product of Taxpayer's services was the medical professional selected by healthcare operators to provide medical services in a New Mexico facility. Regardless of whether this product is tangible or intangible, we conclude the AHO misapplied the law in finding that Taxpayer does not qualify for the exemption because it does not produce a tangible product.

**{16}**   Finally, Section 7-9-3(F) defines "initial use," in relevant part as, "the first employment for the intended purpose." The plain language of the statute "focus[es] on the activities of the buyer . . . in determining whether the buyer made initial use . . . of the seller's activities in New Mexico or elsewhere." *TPL, Inc.*, 2003-NMSC-007, ¶ 17. Here, the healthcare operators, which were located in New Mexico, used Taxpayer's recruitment and placement services to select healthcare providers to provide medical services in New Mexico. As we concluded above, the medical services that were provided in New Mexico were provided only by the medical professionals, not by Taxpayer, and the services cannot be imputed to Taxpayer. For that reason, the medical services performed by healthcare providers in New Mexico cannot be imputed to Taxpayer. The record shows that the first employment of the selected medical professionals took place upon their arrival at a New Mexico facility to provide medical services on behalf of the healthcare operators. As such, we hold that the product of Taxpayer's services was "initially used" in New Mexico and the second requirement for the exemption is satisfied.[2]

**{17}**   The record supports our conclusion that Taxpayer's service activities were performed electronically from offices located out of state. There is no evidence in the record to support a finding that Taxpayer performed its primary services, for which it was contracted, in New Mexico. The product of Taxpayer's recruiting and placement services was initially used by the buyers, the healthcare operators, when a qualified medical professional arrived at the New Mexico facility to perform medical services. For these reasons, we determine the AHO erred and conclude Taxpayer is exempt from GRT under Section 7-9-13.1.

**CONCLUSION**

---

[2]To the extent Taxpayer relies on *Sonic Industries v. New Mexico Taxation & Revenue Department*, 2006-NMSC-038, ¶ 14, 140 N.M. 212, 141 P.3d 1266, and *Kmart Corporation v. New Mexico Taxation & Revenue Department*, 2006-NMSC-006, ¶¶ 4, 21, 139 N.M. 172, 131 P.3d 22, in support of its argument that its business activities occur out of state and are not subject to GRT, neither of these cases are informative here because, these cases both involved the sale of property in the form of franchise agreements and trademark, trade names, and domestic services marks. Our case law does not address the application of GRT to services performed electronically from out of state and the product of which is initially used in New Mexico. Instead, this Court determines the framework in *ITT Educ. Servs., Inc.* is most persuasive; focusing on Taxpayer's services and where the services were performed. *See* 1998-NMCA-078, ¶ 13.

**{18}** Based on the foregoing reasons, we reverse the AHO's determination that Taxpayer was not exempt from GRT under Section 7-9-13.1 and reverse the AHO's assessment of taxes, penalties, and interest.

**{19}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**