599 P.2d 1098

**BASKIN–ROBBINS ICE CREAM COMPANY, Plaintiff-Appellant,**

v.

**REVENUE DIVISION, DEPARTMENT OF TAXATION AND REVENUE of the State of New Mexico, Defendant-Appellee.**

**No. 3683.**

Court of Appeals of New Mexico.

Aug. 9, 1979.

Sandra Jo Craig, Schlenker, Craig & Lebeck, Albuquerque, for plaintiff-appellant.

Jeff Bingaman, Atty. Gen., Sarah Bennett, Sp. Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

SUTIN, Judge.

Taxpayer appeals a Decision and Order of the Director, Revenue Division, which imposed payment of gross receipts taxes based upon income derived from an Area Franchise Agreement entered into with Creamland Dairies, Inc., a New Mexico based corporation engaged in the manufacture and processing of dairy products in New Mexico. We affirm.

In his Decision and Order, the Director states that the issue is whether Taxpayer is subject to the New Mexico gross receipts tax on royalties received by Taxpayer based on Creamland's sales of Taxpayer's brand of ice cream products in New Mexico.

The Decision and Order is lengthy and detailed and is supported by judicial authority. It relates to two subjects: (1) that Taxpayer is engaged in business in New Mexico by leasing its property in New Mexico, and (2) that Taxpayer is not engaged in interstate commerce.

In arriving at its Decision, the Director found that Taxpayer is a Delaware Corporation with headquarters in California. It owns distinctive trademarks, trade names, emblems, merchandizing designs and services, recipes and formulas. It has no employees nor any offices located in New Mexico. It does not own or lease any real property nor does it manufacture or sell any products in New Mexico.

Under the 1966 franchise agreement executed in California, taxpayer furnished its assorted items to Creamland to use in the manufacture and sale of ice cream products to "Baskin-Robbins 31 Ice Cream" retail stores in New Mexico, stores that are established by Creamland through a "B–R Retailers Franchise Agreement." This Agreement continued to the time of trial.

Taxpayer's trademarks are "31" and "Baskin-Robbins 31 Ice Cream." (The parties agreed that the secret recipe book and the trademarks were the basis of the agreement; that these were properties used by Creamland to manufacture Baskin-Robbins Ice Cream according to the recipes). Taxpayer's most valuable assets are its trade name, trademark and related intangibles. These properties are used in New Mexico. The secret formulas and techniques are utilized in New Mexico. Taxpayer's method of business exploits the New Mexico market for Taxpayer's benefit.

Creamland pays Taxpayer a royalty in California based upon the ice cream products sold by Creamland to its New Mexico retail stores.

The remainder of the "findings" will be discussed under the two subjects mentioned above.

A. *Taxpayer is engaged in business by leasing its property to Creamland in New Mexico.*

■ The Director further found that Taxpayer had "property located in New Mexico; the formula or recipe book and more importantly, *a bundle of intangible rights* being employed in New Mexico"; that the grant of rights to Creamland of some part of Taxpayer's property rights in its trademarks and secret formula "is the *leasing of property* which is employed in New Mexico regularly and systematically for business purposes"; that the legislature intended to impose a tax on receipts from *leasing* such property employed in New Mexico because of the definition of "property" in § 7–9–3(I), N.M.S.A. 1978, and Taxpayer is "engaging in business" in New Mexico.

The Director held that Creamland was engaged in business because its gross receipts were derived from leasing property in New Mexico.

To determine the validity of the Director's ruling we must seek the answer in the definitional aspects of the Gross Receipts Tax Act.

Section 7–9–3(E) reads:

"engaging in business" means carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit;

"The definition of 'business' as stated in the statute does not say 'any *act* engaged in for gain,' but rather 'any *activity*.' Webster's New International Dictionary lists, as synonyms of *activity,* the words *occupation* and *business.* Accordingly, no definitive distinction can be drawn between the definition of *business* as used in the statute, and that of its common and accepted meaning." [Emphasis theirs.] *Novak v. Redwing,* 89 Ga.App. 755, 81 S.E.2d 222, 224 (1954). *See, State v. Spink Hutterian Brethren,* 77 S.D. 215, 90 N.W.2d 365, 379 (1958). ("The words 'occupation' and 'business' are synonyms of 'activity.'")

We find that Taxpayer was "engaging in business" as defined by Section 7–9–3(E). It was doing what it was organized and authorized to do. *Besser Company v. Bureau of Revenue,* 74 N.M. 377, 394 P.2d 141 (1964).

■ The remaining issue is whether taxpayer was "leasing property employed in New Mexico" as stated in the definition of "gross receipts." Section 7–9–3(F).

Section 7–9–3(J) reads:

"leasing" means *any arrangement* whereby, for a consideration, *property* is employed for or by any person other than the owner of the property. [Emphasis added.]

Section 7–9–3(I) reads:

"property" means . . . *licenses, franchises . . . trademarks . . .* [Emphasis added.]

Taxpayer was "engaging in business" and owned "property" in New Mexico used by Creamland—the franchise and trademarks. Is the Area Franchise Agreement "any arrangement" within the definition of "leasing"? The term "any arrangement" is broad and expansive.

*H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205, 211–12 (1972) defines a franchise as follows:

. . . In its simplest terms a franchise is a license from the owner of a trademark or trade name permitting another to sell a product or service under that name or mark. More broadly stated, the franchise has evolved into an elaborate agreement under which the franchisee undertakes to conduct a business or sell a product or service in accordance with methods and procedures prescribed by the franchisor and the franchisor undertakes to assist the franchisee through advertising, promotion and other advisory services. The franchise may encompass an exclusive right to sell the product in a specified territory (see 15 Business Organizations, Glickman, Franchising, § 2.01).

By translating the definition of "leasing" into the facts of this case, "leasing" means an Area Franchise Agreement (any arrangement) whereby for payment of royalties (a consideration) a franchise and trademark (property) are employed by Creamland (any person) other than Taxpayer (owner) of the franchise and trademarks (property).

When definitions of "engaging in business," "leasing" and "property" are applied to Taxpayer, Taxpayer cannot escape the fact that it is leasing property in New Mexico for which it receives royalties. The royalties are "gross receipts," the money received by Taxpayer from leasing property employed in New Mexico. Section 7-9-3(F).

In so construing the statute, we follow the rule announced by Justice Moise in *Besser Company, supra,* that a taxpayer "should be given a fair, unbiased and reasonable construction, without favor either to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered." [74 N.M. at 381, 394 P.2d at 145.]

Taxpayer is "engaging in business" by "leasing" property employed in New Mexico. "For the privilege of engaging in business, an excise tax equal to four percent of gross receipts is imposed on any person engaging in business in New Mexico." Section 7-9-4(A).

Taxpayer is subject to the Gross Receipts Tax Act.

### B. *Taxpayer is not engaged in interstate commerce.*

The Director determined that "The fact that the franchise and royalty payments were received in California or that the franchise was executed by the taxpayer in California does not per se, establish that the taxpayer's receipts were from interstate commerce"; that to the extent that the Taxpayer's property is used solely in New Mexico, the taxpayer's activity is localized in New Mexico; that this is not the classic case involving the transportation of property or service from one state to another; that if ever the Taxpayer's activities involved interstate commerce, that commerce ceased when Creamland started performance in New Mexico pursuant to the franchise agreement.

"It is Taxpayer's position that its activities (vis a vis the Agreement) are clearly interstate commerce. To the extent the activities which the Director relies on to support this Assessment are *intra* state, they are activities of Creamland . . . *not* those of Taxpayer. *It is Taxpayer's activities which must be examined to sustain the Assessment of Gross Receipts Tax.*" [Emphasis added.] [Br. p. 16.] "Clearly," says Taxpayer, "the agreement and the Lanham Act requires services from Taxpayer, many of which are performed in California." We disagree.

What are Taxpayer's "activities" or "services" that place it in the stream of commerce? (1) New flavors are developed in California; (2) forms for leases and agreements supplied by Taxpayer are developed in California; (3) trademarks are the symbol of the good will of Taxpayer's business and its continued value depends upon the continuing use of the trademarks in its business with its continuing effort to regulate the use of the trademarks. When we bundle up these "activities" or "services," we find no relationship to the concept of interstate commerce. The only contact Taxpayer has with New Mexico is its Area Franchise Agreement.

When Taxpayer's recipes, recipe book and trademarks come to rest in New Mexico, their use becomes localized and have left the stream of interstate commerce. *Besser Company, supra.* The franchise agreement is not within the protection of the Commerce Clause unless its performance is within its protection. *Besser Company, supra.* Taxpayer does not perform the agreement. It is completely performed in New Mexico by Creamland, so that the performance of the contract is not within the protection of the Commerce Clause.

The Lanham Act (Trademarks) is 15 U.S.C. § 1051, et seq. In § 1127, which

contains "Definition of terms; construction; intent," we find the following:

> For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto *and the goods are sold or transported in commerce* and (b) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in this and a foreign country *and the person rendering the services is engaged in commerce in connection therewith.* [Emphasis added.]

■ Taxpayer neither sells nor transports goods that are marked nor is it engaged in commerce in connection with the use or display of the mark in the sale or advertising of services. The use or display of the trademarks were franchised to Creamland and used by Creamland in New Mexico in the sale and advertising of its products. None of the "activities" of the franchise agreement are serviced by mail, telephone, correspondence or by any employees of taxpayer. We find no intercourse or traffic between California and New Mexico. Mere contracts are not commerce at all, neither intrastate nor interstate. *Western Live Stock v. Bureau of Revenue,* 41 N.M. 141, 65 P.2d 863 (1937), aff'd 303 U.S. 240, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944 (1938).

Taxpayer does claim that the Director cannot tax services performed outside the State. *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M. 79, 547 P.2d 562 (1976). We agree. ASI was an Illinois based correspondence school that sold courses of education to New Mexico students. "After the contract was accepted, the whole program was serviced entirely by mail, telephone, and correspondence between ASI instructors in Illinois and the student in New Mexico. The educational kit and materials were all mailed to the student in New Mexico from the State of Illinois." *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M.

133, 137, 548 P.2d 95, 99, (1975), Sutin, J., dissenting. The Supreme Court said:

> . . . *Virtually all the services accompanying the sale of educational materials by ASI were performed in Illinois.* The Commissioner's decision and order, therefore, are not supported by substantial evidence. [89 N.M. at 82, 547 P.2d at 565.] [Emphasis added.]

The relationship between Taxpayer and Creamland does not approach that which existed between *Advanced Schools* and its students. In *Advanced Schools,* the contract was serviced and performed in Illinois. In the instant case, the contract was serviced and performed in New Mexico by Creamland. In *Advanced Schools,* New Mexico taxed it for services performed in Illinois. In the instant case, New Mexico does not tax Taxpayer for providing recipes and forms of leases prepared in California.

■ Taxpayer has not disclosed any "activities," and we have found none that place taxpayer within the perimeter of what we deem interstate commerce to mean—intercourse or traffic of some nature between the states. It is only such transactions as directly affect interstate commerce and impose a direct burden thereon that fall within the interdiction of the Commerce Clause of the Federal Constitution. *Western Live Stock, supra.*

■ Taxpayer relies primarily on a formula that it gleaned from *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). This case presented the question whether the application of a Mississippi tax on "the privilege of doing business" within the State of the activity in interstate commerce of a motor carrier in transporting an out-of-state manufacturer's automobiles between points in the State violated the Commerce Clause. A unanimous court said "no."

*Complete Auto Transit* is not applicable. The Commerce Clause plays no part in the instant case.

It is important to note that *Complete Auto Transit* overruled *Spector Motor Service v. O'Connor,* 340 U.S. 602, 71 S.Ct. 508,

95 L.Ed. 573 (1951), a case cited in *Spillers v. Commissioner of Revenue,* 82 N.M. 41, 475 P.2d 41 (Ct.App.1970); *Evco v. Jones,* 81 N.M. 724, 472 P.2d 987 (Ct.App.1970); *Bell Telephone Laboratories v. Bureau of Revenue,* 78 N.M. 78, 428 P.2d 617 (1966).

Taxpayer is not engaged in interstate commerce. The tax here imposed is conditioned on Creamland's local business of manufacturing and selling ice cream products in New Mexico. It is not a tax imposed on the importation of property or the rendering of services outside the State; neither is it a tax measured by income derived from manufacturing and selling ice cream products in any other state; nor is the tax different from that assessed and paid by local taxpayers in manufacturing and selling ice cream products for others.

Affirmed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

HERNANDEZ, J., concurs in result.