605 P.2d 251
**AMERICAN DAIRY QUEEN CORPORATION, Appellant,**

v.

**TAXATION AND REVENUE DEPARTMENT of the State of New Mexico, Appellee.**

**No. 3907.**

Court of Appeals of New Mexico.

Dec. 20, 1979.

Thomas J. Dunn, Nordhaus, Moses & Dunn, Albuquerque, John P. James, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for appellant.

Jeff Bingaman, Atty. Gen., Sarah E. Bennett, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Taxpayer appeals a Decision and Order of the Director, Revenue Division, which imposed payment of gross receipts taxes based upon fees received from the lease of territorial franchises employed in New Mexico. We affirm.

The issue is whether the franchise fees paid by New Mexico territorial franchisees to Taxpayer are subject to the New Mexico Gross Receipts Tax Act.

International Dairy Queen, Inc. (IDQ) and Taxpayer are Delaware Corporations. Taxpayer is a wholly owned subsidiary of IDQ. IDQ and its subsidiaries are engaged in the business of developing, licensing, franchising and servicing a system of "Dairy Queen" stores which sell to the public various dairy desserts, food items and beverages under the "Dairy Queen," "Brazier" and "Mr. Misty" trade names. Taxpayer owns the trademarks as well as trade names and franchise rights. The stores for the most part are owned by independent third parties.

The "Dairy Queen" system was developed on a territorial basis under which national operators granted territorial franchise development and operating rights for special geographic areas ranging in size from a city or county to an entire state. The owners of such territorial rights are known as territory operators (TOs). Many of the TOs grant franchise sub-license agreements for individual store locations or sub-territories. TOs may, and some do, themselves operate "Dairy Queen" stores within their territories.

No "Dairy Queen" store in New Mexico has ever been owned or franchised by Taxpayer. The contacts of IDQ and Taxpayer with New Mexico are through franchise agreements with territory operators, sales of products by IDQ and occasional visits to New Mexico by employees of IDQ and subsidiaries.

The typical territory agreement is detailed and extensive. Briefly, Taxpayer is the owner of "Dairy Queen," a trade name registered in the United States Patent Office. Taxpayer granted the territory franchisee, called licensee, the exclusive right and license to engage in and conduct the "Dairy Queen" business in a defined territory and authorized the licensee to use the trademarks and trade name "Dairy Queen" in the operation of the business together with the right to sub-license the use of the trademark and trade name. The use of "Dairy Queen" and the operation of the business of the licensee and sub-licensee are under the strict supervision and control of Taxpayer. The licensee pays Taxpayer a computed license fee.

During the years 1972–1975, Taxpayer received $67,516.00 from Territory Operators. The receipts of those fees formed the basis for the assessment of the New Mexico Gross receipts tax against Taxpayer, the subject of this action.

Taxpayer contended (1) that it was not engaged in business in New Mexico and that it did not realize "gross receipts" as defined in § 7–9–3(F), N.M.S.A.1978, and

(2) several constitutional issues protected Taxpayer from taxation.

### A. Taxpayer was engaged in business in New Mexico.

In *Aamco Transmissions v. Tax. & Rev. Dept.*, 93 N.M. 389, 600 P.2d 841 (Ct. App.1979) and *Baskin-Robbins Ice Cream Co. v. Revenue Div.*, 93 N.M. 301, 599 P.2d 1098 (Ct.App.1979), this Court held that a franchisor, a foreign corporation, which entered into agreements with licensees in New Mexico for use of franchisor's trade name and trademark are engaged in business in New Mexico. This conclusion comes from the definitions in the Gross Receipts Tax Act of "engaging in business," "leasing" and "property." Section 7–9–3(E), (J) and (I), N.M.S.A.1978. "Property" as defined includes "licenses, franchises and trademarks." Taxpayer is "engaging in business" in New Mexico by "leasing property" within this State. Taxpayer seeks to differentiate its operation from that of *Aamco*; that *Aamco* and *Baskin-Robbins* are not controlling.

*First*, Taxpayer claims that *Aamco* is not controlling because *Aamco* had a direct contractual relationship with the franchisee retail establishments on the sales of which the fees in question are calculated; that Taxpayer lacked such a relationship because it never owned a "Dairy Queen" store in New Mexico, nor one directly franchised by Taxpayer; that Taxpayer directly franchised Territorial Operators. This is a distinction without a difference because TOs stand in the shoes of *Aamco* retail establishments for purposes of taxation. Taxpayer's trade name, trademark and related intangibles are used in New Mexico by TOs. This fact establishes that Taxpayer is "engaged in business" in New Mexico and the consideration received by taxpayer from TOs is taxable as gross receipts.

*Second*, Taxpayer argues that it never granted any rights to anyone in New Mexico; that long prior to its formation, territorial rights to the entire State of New Mexico had been granted; that Taxpayer merely acquired the grantor's rights in those arrangements from its predecessors. Its predecessors were the TOs. This is also a distinction without a difference.

The issue is not whether Taxpayer failed to grant any rights to anyone in New Mexico. The issue is whether Taxpayer itself has been "engaged in business" in New Mexico since 1971, the beginning year for which it was taxed. Prior to 1971, taxpayer became the franchisor. It allowed TOs in New Mexico to use the trademarks and trade names and extended to them related intangibles. By this process, Taxpayer became "engaged in business" in New Mexico.

*Third*, Taxpayer argues that the *Aamco* fees subjected to the tax are denominated "franchise fees"; that "license fees" and "service fees" paid to *Aamco* by its franchisees were not included in the tax base; that Taxpayer's receipts at issue are its "service fee" receipts as found by the Director. The Director made no such finding. The fees which formed the basis for the assessment of the tax were those continuing fees paid by the TOs to Taxpayer. These fees were the franchise fees that are subject to the tax. An officer of IDQ who had the accounting responsibilities of Taxpayer testified that the "service fees" were called "license fees" in the territorial agreement. Whether called "license fees" or "franchise fees," name calling does not escape the Gross Receipts Tax Act. Taxpayer is engaged in business in New Mexico by allowing TOs to use Taxpayer's trade names and trademarks and related intangibles for which Taxpayer is paid by TOs.

*Fourth*, Taxpayer claims it has no tangible property in New Mexico. This fact is irrelevant. The Director found that Taxpayer had "a bundle of intangible property rights being employed in New Mexico"; that "A principal part of the taxpayer's business is the granting, in specified territorial areas, *the use of taxpayer's property rights* in its trademarks, trade name, business practices and certain patent rights." [Emphasis added.] Licenses, franchises and trademarks are property in New Mexico. Section 7–9–3(I), N.M.S.A.1978.

It is the presence of these properties in New Mexico that lays the foundation for the assessment of a tax regardless of any services rendered TOs from outside the State.

*Fifth,* Taxpayer differentiates *Aamco's* concession that its franchise agreement was a lease whereas Taxpayer does not lease property employed in New Mexico. This is also a distinction without a difference. Section 7–9–3(J) reads:

"leasing" means *any* arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property. [Emphasis added.]

 Under this definition, Taxpayer's arrangements with TOs fall within the definition of "leasing." Under the broad language of the Gross Receipts Tax Act, changes in names of any arrangement by which a Taxpayer is related to New Mexico are futile. The use of such names as "contractual agreements," "leasing agreements," "service agreements," or any others constitute an "arrangement." The "arrangement" as defined is controlling. *Baskin-Robbins, supra.*

We hold that *Aamco* and *Baskin-Robbins* are controlling.

B. *Constitutional questions raised do not exempt Taxpayer from taxation.*

██ Taxpayer has exhausted every available constitutional provision to seek relief from taxation: The Commerce, Due Process and Equal Protection Clauses of the Constitution of the United States. The Commerce and Due Process Clauses were decided adversely to Taxpayer in *Aamco* and *Baskin-Robbins.* We are not persuaded to the contrary. The issue remaining is whether taxation of Taxpayer for allowing TOs the use of its trade name and trademarks denies Taxpayer the equal protection of the law.

██ To arrive at a favorable conclusion, Taxpayer argues that a gross discrimination exists against licensors of trademarks; that this discrimination is present due to an improper classification. The classifications are described as follows: On the one hand, licensors of *intangible* property, such as trade names, incorporated in a product for sale to the public is taxed, whereas, on the other hand, persons who engage in the sale or lease of *tangible* personal property is another type of transaction (§§ 7–9–46, 7–9–47, 7–9–48, 7–9–49 and 7–9–50), and they are allowed deductions from gross receipts; that the Equal Protection Clause of the Fourteenth Amendment prohibits such arbitrary classifications.

If we understand Taxpayer's position correctly, it claims that it is irrational to exempt from taxation, property that will ultimately be incorporated in *another* transaction subject to the gross receipts tax, and yet tax a trademark incorporated in a product to be sold to the public *absent* "another transaction." Taxpayer is mistaken. It cited no authority in support of its position.

In enacting the Gross Receipts Tax Act, the legislature created a system of taxation under which a tax can be imposed upon and paid by a licensor who "leases" a trademark to a licensee. It granted an exemption to one who sells tangible personal property to another under a type of transaction wherein the seller receives a non-taxable transaction certificate. The exemption merely delayed the time that the seller would redeem the certificate and pay the tax. To contend that a delay in the payment of the tax by one seller and not another is irrational under the above circumstances does not constitute a rational argument that it was denied the equal protection of the law.

The equal protection clause is often invoked in support of a claim that a state taxing scheme is arbitrary. This is a familiar argument and the general principles are well settled.

We need research no further than *Michael J. Maloof & Co. v. Bureau of Revenue,* 80 N.M. 485, 458 P.2d 89 (1969). *Maloof* involved an amendment by the legislature of the Emergency School Tax Act, one that imposed a tax on one-half of one percent only upon the gross receipts of wholesalers of alcoholic liquors and beverages. Whole-

salers claimed that it violated their rights under the Fourteenth Amendment because of the discriminatory, arbitrary, and unreasonable distinction between wholesalers in the liquor business and wholesalers of other commodities. New Mexico cases of unconstitutional discrimination were cited. In distinguishing these cases, Mr. Justice Watson said:

> In the field of taxation, more than in other fields, the legislature possesses the greatest freedom in classification, and to attack such as a violation of the Fourteenth Amendment *places the burden on the one attacking to negative every conceivable basis which might support the classification.* [Emphasis added.] [Id. 486, 458 P.2d 90.]

To succeed on the equal protection argument, Taxpayer must not only overcome the presumption of constitutionality that attaches to every statute, but must also establish that there is no conceivable state of facts which would support the classification. The burden is on Taxpayer "to negative every conceivable basis which might support the classification."

This heavily weighted burden which is placed upon a taxpayer reduces its ability almost to the vanishing point to challenge a classification by way of the Equal Rights Clause of the Constitution. This challenge was accomplished where the difference in tax treatment of property for appraisal was based solely on whether a contractor used his equipment in more than one county. *Halliburton Company v. Property Appraisal Dept.*, 88 N.M. 476, 542 P.2d 56 (Ct.App. 1975). On the other hand, under the Gross Receipts Tax Act, where the legislature made a distinction with respect to tax liability as between purchasers and bailors, we held that there is a real substantial difference between those classes of persons who acquire title and ownership of property and those who acquire only the interest of a bailee under a lease agreement. *Rust Tractor Co. v. Bureau of Revenue*, 82 N.M. 82, 475 P.2d 779 (Ct.App.1970). Furthermore, where receipts derived from radio and television stations from advertising were ex-

empt from gross receipts taxation, it was not a denial of equal protection to exempt such advertising revenues, while taxing gross receipts received by a newspaper publisher, including receipts obtained from out of state advertising locally published. *New Mexico Newspapers, Inc. v. Bureau of Revenue*, 82 N.M. 436, 483 P.2d 317 (Ct.App. 1971).

In the instant case, Taxpayer could be denied equal protection of the law if it paid the tax as a licensor of trademarks and other such licensors did not pay. "Under the stringent statutory provisions of the Gross Receipts Tax Act, no franchise can escape payment of the tax. Relief can be obtained only in the legislature, not in the courts." *Aamco, supra* (600 P.2d 846), Sutin, J., specially concurring. In *New Mexico Newspapers, Inc., supra*, Judge Spiess said:

> If inequities are occasioned taxpayer which result from classification its remedy is with the Legislature. [82 N.M. at 442, 483 P.2d at 323.]

In the instant case, the classification was reasonable and did not constitute a denial of equal protection.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., concurs in result.