2006-NMSC-038

141 P.3d 1266

**SONIC INDUSTRIES, Plaintiff–Petitioner,**

v.

**STATE of New Mexico and John Chavez, Secretary of the New Mexico Taxation and Revenue Department, Defendants–Respondents.**

**No. 26,447.**

Supreme Court of New Mexico.

Aug. 3, 2006.

Rehearing Denied Aug. 31, 2006.

Simons & Slattery, L.L.P., Daniel H. Friedman, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Jeffrey W. Loubet, Special Assistant Attorney General, Bruce J. Fort, Special Assistant Attorney General, Bridget A. Jacober, Special Assistant Attorney General, Santa Fe, NM, for Respondents.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Curtis W. Schwartz, Timothy R. Van Valen, Katharine Cook Fishaman, Santa Fe, NM, for Amicus Curiae, Holiday Hospitality Franchising Inc.

## OPINION

MAES, Justice.

{1} This case requires us to determine whether franchise fees paid by New Mexico franchisees to an out-of-state corporation are subject to taxation under the Gross Receipts and Compensating Tax Act, NMSA 1978, §§ 7–9–1 through 7–9–100 (1966, as amended through 2006).[1] Sonic Industries, Inc., an out-of-state corporation, appeals from an opinion of the Court of Appeals which held that the New Mexico Taxation and Revenue Department has the authority to assess gross receipts tax (GRT) on fees paid to Sonic by its New Mexico franchisees. *See Sonic Indus., Inc. v. State*, 2000–NMCA–087, 129

---

1. In 2006, the Legislature amended sections of the Gross Receipts and Compensating Tax Act. In this opinion, however, our analysis does not consider the 2006 statutory changes, as this case was originally filed in 1997.

N.M. 657, 11 P.3d 1219. In its appeal to this Court, Sonic raises five issues: 1) whether 1991 amendments to the Gross Receipts and Compensating Tax Act eliminated the GRT and the compensating tax on out-of-state conveyances of intangibles, including franchises and trademarks, and their use in New Mexico; 2) whether the Court erred in ruling that Sonic's licensing of its trademarks and its out-of-state performance of services for New Mexico franchisees are "bundled" elements of a taxable New Mexico sale of a franchise; 3) whether the Court's grant of summary judgment in favor of the Department was precluded by material factual disputes; 4) whether Sonic's receipts from licensees are a pre-existing contractual split of a single revenue stream on which GRT has already been paid; and 5) whether the Court erred in granting summary judgment to the Department on the assessment of a penalty against Sonic. We reverse the Court of Appeals' determination that the 1991 amendments to the Gross Receipts and Compensating Tax Act did not affect the Department's ability to assess GRT on Sonic's franchising activities. We hold that Sonic's franchising activities constitute out-of-state sales that are not subject to GRT. Having determined that the franchising fees paid to Sonic are not taxable, we find it unnecessary to answer the other questions raised by Sonic regarding the bundling of franchise services with the out-of-state grant of a license to use franchises or trademarks in New Mexico and the assessment of a penalty against Sonic.

**FACTS AND PROCEDURE BELOW**

{2} Sonic is a corporation located in Oklahoma City, Oklahoma. Sonic maintains its corporate office in Oklahoma. Its franchising activities are managed from the Oklahoma corporate office and sales are solicited from this out-of-state location. Sonic has no office, warehouse, or resident salesperson in New Mexico, and thus no reporting location in New Mexico. Sonic enters License Agreements with franchisees who will operate restaurants in New Mexico and around the country. Even though the franchises exist in New Mexico, the franchisees travel to Oklahoma City to sign the agreements. The License Agreements between Sonic and its franchisees grant to franchisees the right to adopt and use the "Sonic System." The "Sonic System" includes the right to use federally registered trademarks, trade names, and service marks. Also specified in the License Agreements are Sonic's duties, which include providing plans for buildings, an operations manual, services such as marketing assistance and training, and a field evaluation program. Franchisees are also provided with financial resources and purchasing cooperatives. These services are in large part performed outside New Mexico. Under the Agreement, each franchisee pays an initial payment and a specified percentage of the revenues generated by the restaurant as a royalty to the Oklahoma corporation. These revenues are taxed by the Department as gross receipts and it is undisputed that the New Mexico franchisees have fully paid GRT on these revenues.

{3} In November 1995, the Department issued an assessment to Sonic for GRT, penalty, and interest for the period of December 1988 through December 1994. The Department alleged that Sonic owed $232,941.67 as a result of failing to pay GRT on franchise fees paid by New Mexico franchisees. Sonic paid the full amount assessed and filed a claim for refund which the Department denied. Sonic then filed a Complaint for Refund of Taxes Paid against the Department in district court.

{4} In the district court, Sonic moved for partial summary judgment alleging that its franchising activities constituted non-taxable out-of-state sales of licenses and associated services. The Department filed a motion for full summary judgment challenging Sonic's legal conclusions. The court denied both parties' motions for summary judgment, but certified its denials for interlocutory appeal.

{5} The Court of Appeals upheld the Department's assessment of the GRT on the licensing fees paid to Sonic by its New Mexico franchisees. Interpreting the effect of the 1991 amendments to the Gross Receipts and

Compensating Tax Act, the Court held that "fees paid to Sonic by New Mexico franchisees for the right to operate Sonic restaurants located in New Mexico constitute receipts from selling property *in* New Mexico" and are taxable gross receipts as defined by Section 7–9–3(F) (2000, prior to 2003 amendment) of the Gross Receipts and Compensating Tax Act. *Sonic,* 2000–NMCA–087, ¶ 15, 129 N.M. 657, 11 P.3d 1219.[2]

{6} Sonic filed a petition for a writ of certiorari in this Court on August 25, 2000, which was granted on October 6, 2000. On June 7, 2002, this Court entered an order quashing the writ of certiorari. Sonic filed a motion for reconsideration or rehearing which was granted on September 3, 2002. On October 2, 2002, a stay in proceedings was ordered pending a ruling in *Kmart Corp. v. Taxation & Revenue Dep't,* 2006–NMSC–006, 139 N.M. 172, 131 P.3d 22, which also raised the issue of the Department's authority to impose GRT on the licensing of intangible property subsequent to the 1991 amendments. The *Kmart* Opinion was filed in 2005 after this Court lifted a stay in the proceedings that had been granted when Kmart filed for bankruptcy in 2002. *Id.* ¶ 8. Having decided the Department's taxation authority in *Kmart,* we now lift the stay ordered in this proceeding in order to determine the Department's authority to impose GRT on franchise fees paid by New Mexico franchisees to Sonic.

**STANDARD OF REVIEW**

{7} Because the material facts in this case are undisputed, we review de novo the Court of Appeals' application of the law to the facts. *TPL, Inc. v. Taxation & Revenue Dep't,* 2003–NMSC–007, ¶ 10, 133 N.M. 447, 64 P.3d 474. The interpretation of phrases within a statute is a question of law that is reviewed de novo. *Id.*

**DISCUSSION**

{8} The main issues raised in this case are substantially similar to issues ad-

dressed by this Court in *Kmart.* In *Kmart,* we acknowledged that our opinion was necessarily a response to the Court of Appeals' decision in *Sonic. Kmart,* 2006–NMSC–006, ¶ 10, 139 N.M. 172, 131 P.3d 22. Although *Kmart* involved the assessment of GRT on trademark licensing royalties rather than the taxability of franchise fees, "we do not perceive any legally significant distinction between franchise fees and trademark licensing royalties" within the context of determining the applicability of GRT, *id.,* and this Court's analysis in *Kmart* is therefore applicable to the facts of this case.

{9} As in *Kmart,* "[t]his case requires us to decide if the Legislature intended to apply the GRT to the receipts generated from the License Agreement" at issue. *Id.* The purpose of the GRT is to provide revenue by taxing certain activities within New Mexico. Section 7–9–2 (1966). These activities include "selling property in New Mexico," "leasing property employed in New Mexico," and "performing services in New Mexico." Section 7–9–3.5(A)(1) (2003, prior to 2006 amendment). In 1991, the Legislature amended the definition of leasing within the Gross Receipts and Compensating Tax Act. "In the amended statute, leasing was defined as 'an arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property, *except that the granting of a license to use property is the sale of a license and not a lease.*'" *Kmart,* 2006–NMSC–006, ¶ 14, 139 N.M. 172, 131 P.3d 22 (quoting § 7–9–3(E) (1991, prior to 2006 amendment)). Prior to the 1991 amendments, license agreements were considered leases subject to GRT because the intangible subject matter of the license agreements was used or employed within New Mexico. *Id.* ¶¶ 13–14; *Am. Dairy Queen Corp. v. Taxation & Revenue Dep't,* 93 N.M. 743, 747, 605 P.2d 251, 255 (Ct.App.1979) ("[T]he legislature created a system of taxation under which a tax can be

**2.** After *Sonic,* 2000–NMCA–087, 129 N.M. 657, 11 P.3d 1219, was issued, the definition of "gross receipts" within the Gross Receipts and Compensating Tax Act was moved from Section 7–9–3(F) to Section 7–9–3.5. *Compare* § 7–9–3(F) (2000,

prior to 2003 amendment), *with* § 7–9–3.5 (2003, prior to 2006 amendment). Later in this Opinion, we refer to the definition of "gross receipts" as found in Section 7–9–3.5(A)(1) (2003).

imposed upon and paid by a licensor who 'leases' a trademark to a licensee."); *Baskin–Robbins Ice Cream Co. v. Revenue Div., Dep't of Taxation & Revenue,* 93 N.M. 301, 304, 599 P.2d 1098, 1101 (Ct.App.1979) (same); *AAMCO Transmissions, Inc. v. Taxation & Revenue Dep't,* 93 N.M. 389, 391–92, 600 P.2d 841, 843–44 (Ct.App.1979) (same). As in *Kmart,* the effect of this legislative change is at the heart of the issues identified in this case and will necessarily determine whether or not the fees paid by Sonic franchisees are subject to taxation.

{10} The Court of Appeals found that the 1991 amendments to Section 7–9–3(J) require that the granting of a license is no longer treated as a lease of a license and must instead be treated as a sale of a license. *Sonic,* 2000–NMCA–087, ¶ 9, 129 N.M. 657, 11 P.3d 1219 ("[The granting of a license to use the Sonic System] constitutes 'selling.' To the extent our decisions in *AAMCO, Baskin–Robbins,* and *American Dairy Queen* proceeded from the assumption that the licensing of a franchiser's system constituted 'leasing property in New Mexico,' that former analysis is foreclosed by the 1991 amendment to Subsection 7–9–3(J).").[3] The Court, however, determined that "the Legislature's reclassification of licensing as a subclass of selling does not affect the status of franchise fees paid as gross receipts," *id.* ¶ 10, 605 P.2d 251, and that the 1991 reclassification "worked a zero-sum game: to the extent the reclassification of licensing results in fewer transactions that constitute 'leasing,' it results in correspondingly more transactions that constitute 'selling.'" *Id.* ¶ 12, 605 P.2d 251. Rejecting Sonic's argument that the phrase "selling property in New Mexico" should be construed so that "selling occurs 'in' New Mexico only if New Mexico is the place of contracting," *id.* ¶ 13, 605 P.2d 251,

the Court of Appeals concluded that Sonic's interpretation would allow New Mexicans engaged in the sale of real estate or goods manufactured in New Mexico to "evade [GRT] simply by stepping across the state line into a neighboring state to sign the sales agreement." *Id.* The Court stated that it was "highly unlikely that the Legislature intended the phrase 'selling in New Mexico' to have a meaning that would leave the Act vulnerable to evasion by such an obvious subterfuge," *id.,* and viewed the Legislature's use of the phrase "in New Mexico" as "reinforc[ing] the requirement that the activities generating receipts subject to taxation under the Act must have a sufficient nexus with New Mexico to support taxation by New Mexico." *Id.* ¶ 14, 605 P.2d 251. According to the Court, "[t]he 1991 amendment reclassifying licensing as selling did not alter whatever economic nexus exists between Sonic and commercial activity carried on within New Mexico by Sonic franchisees" and therefore the fees paid to Sonic were subject to taxation under the Act. *Id.* ¶ 15, 605 P.2d 251.

{11} The Department urges us to affirm the result reached by Court of Appeals. However, the Department asserts that the Court "should not have accepted [Sonic's] interpretation of the 1991 amendment as one intended to 'reclassify licensing as a form of selling.'" According to the Department, the Court of Appeals misinterpreted the meaning of the amendment language which states that "the granting of a license to use property is the sale of a license and not a lease," Section 7–9–3(J) (2000, prior to 2003 amendment),[4] by giving undeserved emphasis to the word "sale." Arguing that the full text of the 1991 amendments suggests the Legislature did not aim to alter this Court's prior holdings treating licenses as leases, the Department advances that "1979 [f]ranchise cases remain

---

3. The Legislature's 2006 amendment to Section 7–9–3(E) no longer characterizes the grant of a license to use property as a sale of a license. *See* 2006 N.M. Laws, ch. 39, § 1 (" 'leasing' means an arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property, except that the granting of a license to use property is not a lease . . . .").

4. In 2003, the definition of "leasing" within the definition section of the Gross Receipts and Compensating Tax Act was moved from subsection (J) to subsection (E). The language of the definition, however, was not altered. *Compare* § 7–9–3(J) (2000, prior to 2003 amendment), *with* § 7–9–3(E) (2003).

good law" and the "only interpretation of the amendment to § 7-9-3(J) that makes sense in the real world of gross receipts taxation is that the [L]egislature intended to make a distinction between leases and licenses ,of real property, not between *sales* of licenses and *leases* of licenses." Therefore, according to the Department, it is unnecessary to address whether the transaction between Sonic and its franchisees took place "in New Mexico."

{12} Sonic in turn asserts that the Court of Appeals was correct in its determination that after the 1991 amendments, the granting of a license is to be analyzed as the sale of a license. Sonic, however, disagrees with the Court's conclusion that the language "selling property in New Mexico" merely reinforces the need for taxed activities to have a sufficient nexus with New Mexico and does not require the sale to actually occur in New Mexico for it to be subject to GRT. Instead, Sonic argues that the characterization of a license as a lease is dispositive and the "effect of the 1991 amendment was to insulate out-of-state licenses of franchises or trademarks (previously treated as taxable leases) from the gross receipts tax." According to Sonic, the transaction at issue is an out-of-state sale, not subject to the GRT. Additionally, Sonic argues that a 1993 amendment to the compensating tax, which entirely removed intangibles from the ambit of the compensating tax, evinced a legislative intent to ease the tax burden on out-of-state franchisors. *See* § 7-9-7(A) (1993).

■ {13} As in *Kmart*, we will resolve the issues in the case by examining the language of the Gross Receipts and Compensating Tax Act. *Kmart*, 2006-NMSC-006, ¶ 18, 139 N.M. 172, 131 P.3d 22. We believe that the Court of Appeals correctly interpreted the language of the Act when it determined that the effect of the 1991 amendments is that the granting of a license now constitutes selling rather than leasing, and our analysis must therefore focus on whether or not Sonic engaged in "selling property in New Mexico." *Sonic*, 2000-NMCA-087, ¶¶ 11-12, 129 N.M. 657, 11

P.3d 1219. In *Kmart*, this Court held that, as a result of the 1991 amendments, "[u]nder the Act, the GRT only applies when the selling of property takes place within the borders of New Mexico. Thus, licensed property can only be subject to the GRT in New Mexico if the license was in essence *sold in New Mexico.*" *Kmart*, 2006-NMSC-006, ¶ 18, 139 N.M. 172, 131 P.3d 22 (citing § 7-9-3.5(A)(1)(2003)) (internal quotation omitted). In *Kmart*, this Court easily came to the conclusion that the licensed property in that case was not *sold in New Mexico* because "all activity related to the License Agreement took place in Michigan." *Id.* While recognizing that the "subject matter property of the License Agreement was used in New Mexico," this Court resolved that "this use does not subject the Agreement to the GRT." *Id.*

{14} We believe that the agreements between Sonic and its franchisees are comparable to the License Agreement in *Kmart.* Like the licensed property in *Kmart*, the subject matter of Sonic's franchise agreements is not *sold in New Mexico.* The franchise agreements are purchased in Oklahoma and the rights governed by those agreements are then employed in, not moved to, New Mexico. *Cf. Proficient Food Co. v. Taxation & Revenue Dep't*, 107 N.M. 392, 393-97, 758 P.2d 806, 807-11 (Ct.App.1988) (Court of Appeals upheld Department's assessment for GRT upon a California corporation which sent representatives to visit restaurants in New Mexico, delivered ordered goods in its own trucks to restaurants in New Mexico, and had employees place calls to restaurants in New Mexico). Because the sales do not occur in New Mexico, they are not properly taxable by New Mexico. The mere use of the property in New Mexico does not subject the Sonic agreements to imposition of gross receipts taxation. *Kmart*, 2006-NMSC-006, ¶ 18, 139 N.M. 172, 131 P.3d 22 ("The language 'selling property in New Mexico' means that the property as defined in the tax code must be sold in New Mexico for it to be taxed, otherwise the statute would read 'selling property used in New Mexico' is tax-

able."). We therefore hold that the GRT does not apply to the receipts generated from Sonic's License Agreement.

{15} The second issue raised by this appeal is whether the rights and services conveyed in the License Agreement must be considered separately for GRT purposes. Pursuant to the License Agreement, the Sonic franchise includes both the trademarks and the related services performed by Sonic. In its brief to this Court, Sonic raised the issue of whether the Court of Appeals was correct in its determination that for "purposes of the Act, a franchise is to be treated as a compound or 'bundled' form of property, which typically includes a license to use the franchiser's trademark and a commitment by the franchiser to perform various services to assist the franchisee in the operation of the franchised business." *Sonic,* 2000–NMCA–087, ¶ 28, 129 N.M. 657, 11 P.3d 1219. Sonic argued that out-of-state services provided to franchisees should not be bundled with and taxed with the license to use Sonic trademarks and the in-state services performed by Sonic because New Mexico does not generally tax out-of-state services. Because we have determined that the License Agreement in its entirety does not constitute a New Mexico sale, and is therefore not subject to taxation, it is unnecessary to determine whether the Department is required to break a franchise agreement into its component parts to determine tax liability.

{16} Additionally, because the Gross Receipts and Compensating Tax Act does not apply to the receipts generated from Sonic's License Agreement, we conclude that Sonic is not subject to penalty based on nonpayment of GRT.

## CONCLUSION

{17} We hold that the Department's assessment against Sonic for GRT, penalty, and interest for the period of December 1988 through December 1994 was in error and reverse the Court of Appeals' determination that summary judgment should have been granted in favor of the Department. This case is remanded to the district court for further proceedings consistent with this opinion.

{18} IT IS SO ORDERED.

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, EDWARD L. CHÁVEZ, Justices, and MICHAEL D. BUSTAMANTE, Chief Judge, New Mexico Court of Appeals (sitting by designation).